# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO D. FERGUSON, | ) |
|         Petitioner, | ) Civil Action No. 09 - 72E ) |
| v. | ) District Judge Maurice B. Cohill ) Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT DAVID DIGUGLIELMO; THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, and THE DISTRICT ATTORNEY OF THE COUNTY OF ERIE, BRADLEY H. FOULK; | ) ) ) ) ) ) |
|         Respondents. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II. REPORT

Petitioner, Antonio Ferguson, a state prisoner incarcerated at the State Correctional Institution at Graterford, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in the Court of Common Pleas of Erie County for burglary and related charges. For the reasons that follow, the Petition should be denied.

#### A. Relevant Factual History

The record evidence reveals the following.

> \*\*\* Petitioner was convicted of six residential burglaries and two attempted burglaries committed in November and December, 2003. Some of the burglaries occurred in the early morning hours after fresh snow had fallen and one set of distinctive footprints was left in the snow. The footprints were made by a type of lug boot

bearing a distinctive flaw in the pattern on the left sole. The imprint of "Timberland" was distinctly visible on the footprint. Photographs were taken of footprints in undisturbed snow at various reported crime scenes. The police believed that the suspect in the above burglaries was wearing this type of boot.

The police noticed a pattern that one area of the city would be burglarized and the perpetrator would then move to another area opposite of the city. The police also determined the burglaries had the same modus operandi. The victims' back door would be smashed open and purses, wallets and other personal possessions in plain view would be quickly snatched.

On the evening of December 22, 2003, a burglary in progress at 2955 Poplar Street, Erie, Pennsylvania was reported. The police were informed the suspect was seen fleeing toward the east side of the city. As a result, police on the east side of the city were on the lookout for a suspect wearing lug boots. At about 1:00 p.m., Petitioner was seen walking on the street in the proximity to the reported burglary.

Petitioner was approached by a parol officer who shined a flashlight on Petitioner and noticed his boots fit the description of Timberland boots. Another officer on the scene noticed the distinctive footprint left by Petitioner's boots in the snow. Petitioner was asked to show the bottom sole of his left foot. Petitioner complied and offered to remove his boots for police inspection. The police determined the defect on the left sole appeared to match those seen in crime scene photographs.

Petitioner was transported to the Erie City Police Station where he gave oral statements implicating himself in the burglary at 2955 Poplar Street. Petitioner was shown a list of unsolved burglaries that were occurring throughout the city with the same modus operandi. Petitioner admitted to several of the burglaries on the list, but was unable to identify additional burglaries from the list of addresses. After these admissions, he was asked if a ride around the city and a view of the various properties would refresh his memory.

Petitioner agreed and rode with the police in their vehicle and pointed out additional homes he hd burglarized. During this drive around the city, Petitioner implicated an alleged accomplice. Petitioner was then taken back to the Erie City Police Station.

> Petitioner was left alone in an interrogation room while the officers went to find a blank tape to video record his statements. Prior to signing his statement or having it recorded, Petitioner made an incredible escape by jumping out of a second story window of the police station and absconding. Petitioner was apprehended one week later in New York State.

Doc. No. 1-1, pp. 3-4 (internal citations omitted).

On May 20, 2004, Petitioner was charged by criminal information 1279 of 2004 with Burglary, Theft By Unlawful Taking and Receiving Stolen Property, at 1280 of 2004 with Burglary, Theft By Unlawful Taking, Receiving Stolen Property and False Reports, and at 1281 of 2004 with Escape. On May 21, 2004, Petitioner was charged by criminal information 1282 of 2004 with Criminal Attempt at Theft and Loitering and Prowling, at 1283 of 2004 with Burglary, Theft By Unlawful Taking and Receiving Stolen Property, at 1284 of 2004 with Burglary, Theft By Unlawful Taking, Receiving Stolen Property, and two counts Loitering and Prowling, and at 1285 of 2004 with multiple counts each of Burglary, Theft By Unlawful Taking, Receiving Stolen Property, Loitering and Prowling, and False Reports. On November 8, 2004, following a jury trial at numbers 1280 and 1281 of 2004, Petitioner was found guilty as to all charges. On November 10, 2004, following a jury trial at the remaining dockets, Petitioner was found guilty on counts 1,2,3,4,5,6,7,8, & 13 at docket 1285 and as to all counts at docket numbers 1279, 1282, 1283, and 1284. On January 14, 2005, Petitioner was sentenced to an aggregate term of imprisonment of from twenty four (24) to seventy six (76) years. Petitioner filed a direct appeal and a then a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA). Having completed his collateral attack in the state courts, Petitioner filed with this Court a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254 raising the following claims.

1. Trial Counsel rendered ineffective assistance of counsel for failing to have blood samples found at one of the crime scenes tested for DNA.

2. Trial Counsel rendered ineffective assistance of counsel in failing to investigate the presence of additional footprints found at one of the crime scenes.

He raised these claims during his PCRA proceeding.

### B. Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

4

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Palakovich, Civil No. 07-2163, 2010 WL 2134575 (3d Cir. May 28, 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* (quoting Williams, 529 U.S. at 407).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with

5

the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

### C. Ineffective Assistance of Counsel

Petitioner's claims assert ineffectiveness of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under

the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id*. at 689. The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Id*.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*, 466 U.S. at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome. *Id*. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687. The Strickland standard applies equally to appellate counsel. Smith v Robbins, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d at 1095. In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id*. Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id*. A state court's determination of whether such strategy or decision was reasonable is a question of law. *Id*. *See also* McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir.) ("[A] state court's conclusion that counsel rendered effective assistance is not a finding of fact subject to deference by a federal court."), *cert. denied*, 510 U.S. 1028 (1993).

7

1. <u>Trial counsel was ineffective for failing to have DNA testing performed on blood found at the scene</u>.

Petitioner's first claim is that t Petitioner alleges trial counsel was ineffective for failing to secure DNA testing on a small drop of blood found at one of the crime scenes. In its review of this claim, the Superior Court of Pennsylvania held as follows.

> \*\*\* With regard to the DNA evidence, the record reflects that a police officer was questioned on his discovery of a "small drop of blood" found on a door hinge inside one of the burglarized homes. Appellant's counsel thoroughly cross-examined the officer as to his failure to conduct any testing of the blood. Appellant now contends that if his counsel had sought testing of the blood, as Appellant purportedly requested, the results would have either incriminated him or suggested that the blood was left by someone else who may have committed the crime.
>
> We are unable to discern any prejudice to Appellant. Even if the drop of blood had been tested, the results at best would have established that it belonged to someone other than Appellant. Such evidence would not mean that Appellant did not commit that particular crime or that the person who lost that drop of blood at some unknown time did commit that particular crime. Counsel's skilled cross-examination of the police officer made the very point that Appellant finds so critical in this argument. Absent the existence of prejudice, an ineffectiveness claim fails.

Doc. No. 1-1, pp. 18-19 (internal citations omitted).

A recent decision of the Supreme Court illustrates the deference that we must accord to the Superior Court's decision. In <u>Renico v. Lett</u>, \_\_\_ U.S. \_\_\_, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of

8

habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision-or, for that matter, the trial judge's declaration of a mistrial-was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event-for the reasons we have explained-whether the trial judge was right or wrong is not the pertinent question under AEDPA.

*Id*. at 1865, n. 3.

Petitioner has not shown that the decision of the PCRA Court was "was contrary to clearly established Federal law, as determined by the Supreme Court of the United States or that it involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. In order for Petitioner to succeed on his claims it is not enough to convince a federal court that in its independent judgment the state court applied the law incorrectly, it must have applied the law in an objectively unreasonable manner. Petitioner has not made such a showing and, therefore, is not entitled to habeas relief with respect to his first claim.

2. <u>Trial counsel rendered ineffective assistance by failing to investigate the presence of additional footprints</u>.

Petitioner also argues trial counsel was ineffective in failing to investigate additional footprints found at the crime scenes. Again, this issue was addressed by the Superior Court of Pennsylvania and found to be meritless.

> Appellant's related claim regarding footprint evidence is also wholly without merit. As with the blood found at the scene, Appellant's trial counsel fully explored the existence of additional footprints found outside of one of the burglarized residences. While Appellant does not set forth what kind of investigation his trial counsel should have conducted, the trial court's reasoning persuasively rejects this contention.
>
>> The footprints found were in newly-fallen, undisturbed snow in December, 2003. Photographs were taken of footprints found at the crime scenes which showed one set of footprints and which fit the *modus operandi*. Appropriate measures were taken by the investigating officers to protect the footprint evidence and not contaminate the suspect's footprints.
>>
>> By the time trial counsel was appointed [in July 2004] the same snow was not available. It was impossible for trial counsel to independently investigate the crime scenes for the presence of additional footprints. *** There was nothing more trial counsel could do.
>
> We agree. It is patently clear that counsel's only available strategy relative to this contention was to cross-examine the police officers on their investigation into all sets of footprints found. We find this strategy was not only reasonable under the circumstances of this case but appropriately and effectively undertaken by Appellant's counsel. Accordingly, this claim also fails.

Doc. No. 1-1, pp. 19-20 (internal citations omitted).

In <u>Strickland</u>, the Supreme Court stated that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects

of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Thus, a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*.

Here, Petitioner has not shown that the decision of the Superior Court was contrary to clearly established Federal law, as determined by the Supreme Court of the United States or that it involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. Therefore, he is not entitled to habeas relief with respect to his second claim.

## D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto.

Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

                                            Lisa Pupo Lenihan
                                            United States Magistrate Judge

Dated: June 16, 2010

cc:     Antonio D. Ferguson
        GB-8731
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426-0244