# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO D. FERGUSON, | ) |
| | ) Civil Action No. 09 – 72E |
| Petitioner, | ) |
| | ) Senior District Judge Maurice B. Cohill |
| v. | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| SUPERINTENDENT DAVID DIGUGLIELMO, *et al.*, | ) |
| | ) |
| Respondents. | ) |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Petitioner's Relation Back to Amendments (ECF No. 27), which has been construed as a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b), be denied for the reasons stated herein.

### II. REPORT

#### A. Background

In March 2009, Petitioner, Antonio Ferguson, a state prisoner incarcerated at the State Correctional Institution at Graterford, Pennsylvania, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in the Court of Common Pleas of Erie County for burglary and related charges. By Memorandum Order dated August 5, 2010, his petition and a certificate of appealability were denied. Currently pending

1

before the Court is a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b).

### B. Relevant Facts of the Crime

The relevant facts, as set forth in the undersigned's Report and Recommendation dated June 16, 2010, are as follows:

> Petitioner was convicted of six residential burglaries and two attempted burglaries committed in November and December, 2003. Some of the burglaries occurred in the early morning hours after fresh snow had fallen and one set of distinctive footprints was left in the snow. The footprints were made by a type of lug boot bearing a distinctive flaw in the pattern on the left sole. The imprint of "Timberland" was distinctively visible on the footprint. Photographs were taken of footprints in undisturbed snow at various reported crime scenes. The police believed that the suspect in the above burglaries was wearing this type of boot.
>
> The police noticed a pattern that one area of the city would be burglarized and the perpetrator would then move to another area opposite of the city. The police also determined the burglaries had the same modus operandi. The victims' back door would be smashed open and purses, wallets and other personal possessions in plain view would be quickly snatched.
>
> On the evening of December 22, 2003, a burglary in progress at 2955 Poplar Street, Erie, Pennsylvania was reported. The police were informed the suspect was seen fleeing toward the east side of the city. As a result, police on the east side of the city were on the lookout for a suspect wearing lug boots. At about 1:00 p.m., Petitioner was seen walking on the street in the proximity to the reported burglary.
>
> Petitioner was approached by a patrol officer who shined a flashlight on Petitioner and noticed his boots fit the description of Timberland boots. Another officer on the scene noticed the distinctive footprint left by Petitioner's boots in the snow. Petitioner was asked to show the bottom sole of his left foot. Petitioner complied and offered to remove his boots for the police inspection. The police determined the defect on the left sole appeared to match those seen in crime scene photographs.
>
> Petitioner was transported to the Erie City Police Station where he gave oral statements implicating himself in the burglary at 2955 Poplar Street. Petitioner was shown a list of unsolved burglaries that were occurring throughout the city with the same modus operandi. Petitioner admitted to several of the burglaries on the list, but was unable to identify additional burglaries from the list

of addresses. After these admissions, he was asked if a ride around the city and a view of the various properties would refresh his memory.

Petitioner agreed and rode with the police in their vehicle and pointed out additional homes he had burglarized. During this drive around the city, Petitioner implicated an alleged accomplice. Petitioner was then taken back to the Erie City Police Station.

Petitioner was left alone in an interrogation room while the officers went to find a blank tape to video record his statements. Prior to signing his statement or having it recorded, Petitioner made an incredible escape by jumping out of a second story window of the police station and absconding. Petitioner was apprehended one week later in New York State.

On May 20, 2004, Petitioner was charged by criminal information 1279 of 2004 with Burglary, Theft By Unlawful Taking and Receiving Stolen Property, at 1280 of 2004 with Burglary Theft By Unlawful Taking, Receiving Stolen Property and False Reports, and at 1281 of 2004 with Escape. On May 21, 2004, Petitioner was charged by criminal information 1282 of 2004 with Criminal Attempt at Theft and Loitering and Prowling, at 1283 of 2004 with Burglary, Theft By Unlawful Taking and Receiving Stolen Property, at 1284 of 2004 with Burglary, Theft By Unlawful Taking, Receiving Stolen Property, and two counts Loitering and Prowling, and at 1285 of 2004 with multiple counts each of Burglary, Theft By Unlawful Taking, Receiving Stolen Property, Loitering and Prowling, and False Reports. On November 8, 2004, following a jury at number 1280 and 1281 of 2004, Petitioner was found guilty as to all charges. On November 10, 2004, following a jury trial at the remaining dockets, Petitioner was found guilty on counts 1, 2, 3, 4, 5, 6, 7, 8, & 13 at docket 1285 and as to all counts at docket numbers 1279, 1282, 1283, and 1284. On January 14, 2005, Petitioner was sentenced to an aggregate term of imprisonment of from twenty four (24) to seventy six (76) years. Petitioner filed a direct appeal and then a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA).

Having completed his collateral attack in the state courts, Petitioner filed with this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising the following claims.

1. Trial Counsel rendered ineffective assistance of counsel for failing to have blood samples found at one of the crime scenes tested for DNA.

2. Trial Counsel rendered ineffective assistance of counsel in failing to investigate the presence of additional footprints found at one of the crime scenes.

In the Report and Recommendation dated June 16, 2010, the undersigned reviewed the Petitioner's two claims under the deferential AEDPA standard and found that Petitioner had not shown an entitlement to habeas relief. By Memorandum Order dated August 5, 2010, the Court adopted the Report and Recommendation, denied Petitioner's habeas petition, and also denied a certificate of appealability. The Third Circuit Court of Appeals denied Petitioner a certificate of appealability on December 13, 2010.

On December 5, 2013, Petitioner filed with the Third Circuit an application for leave to file a second or successive federal habeas petition. In seeking such relief, Petitioner relied on the United States Supreme Court's recent decision in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), where the Court held that actual innocence, if proven, can serve as a gateway through which a habeas petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations. However, the Third Circuit denied Petitioner's application because McQuiggin did not announce a new rule of constitutional law and because Petitioner presented no newly discovered evidence of actual innocence. Petitioner now seeks relief in this Court.

### C. Rule 60(b) vs. Second or Successive Habeas Petitions

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including fraud, mistake, newly discovered evidence, and the catch-all

4

category "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1)-(3),(6). "The general purpose of Rule 60 . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir. 1978). Because parties have a strong interest in the finality of judgments, the Third Circuit has "cautioned that relief from a judgment under Rule 60 should be granted only in exceptional circumstances." Id.

As an initial matter, a district court must first determine whether a Rule 60(b) motion is, in actuality, a second or successive habeas petition. Because federal courts lack jurisdiction to consider a second or successive habeas petition if a petitioner does not first obtain an order from the circuit, Burton v. Stewart, 549 U.S. 147, 157 (2007), the district court would lack jurisdiction over the motion if it was in fact a second or successive habeas petition. The Supreme Court has held that the use of Rule 60(b) to advance a claim that is "in substance a successive habeas petition" would constitute an impermissible circumvention of the standards set forth in the AEDPA. Gonzalez, 545 U.S. at 531-32.

In sum, Petitioner contends that DNA evidence, in the form of blood that was discovered at one of the crime scenes, was destroyed by the Erie Police Department on October 27, 2005, before his conviction was final, and this fact was not disclosed to him until November 21, 2011, after he had requested DNA testing of the blood on October 5, 2011. He argues that because the DNA evidence was destroyed without prior notice, he was not given the opportunity to demonstrate that the blood belonged to someone other than himself. He states that the DNA evidence was the subject of his ineffective assistance of counsel claim in his post-conviction and federal habeas proceedings.

Although he attempted to litigate his destruction of DNA evidence claim in the state courts through subsequent PCRA petitions, the petitions were either dismissed as untimely and/or deemed to be without merit. He requests to amend his federal habeas petition so that he can add the following claims: (1) a Fourteenth Amendment claim because government officials destroyed DNA evidence that was vital to his appeal and post-conviction proceedings (governmental interference); and (2) a procedural due process and equal protection claim because the Pennsylvania state courts have refused to provide him with an evidentiary hearing in regards to the destruction of the DNA evidence. Petitioner states that this Court can consider his claims because he exhausted his state court remedies and also because the state courts lack the availability of a corrective process and/or the process is ineffective to protect his rights. He states that he never confessed to the crimes or voluntarily surrendered his boots to police, and he maintains his innocence of the burglaries for which he was convicted.[1]

In Gonzalez, the Court explained that a Rule 60(b) motion constitutes a second or successive habeas petition when it advances a new ground for relief or "attacks the federal court's previous resolution of a claim on the merits." 524 U.S. at 532. In other words, a Rule 60(b) motion will be construed as a second or successive habeas petition when the petitioner challenges his underlying conviction rather than the manner in which his previous habeas petition was procured. Id. at 531; Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir. 2004). In this case, it is abundantly clear that Petitioner seeks to assert two new bases for relief from his judgment of conviction. Indeed, his request was brought in the form of a motion to amend his petition to add new claims. Gonzalez makes clear that where a Rule 60 motion asserts a new

---

[1] On July 8, 2014, Petitioner was notified that he could not amend his petition because it had already been denied and judgment entered. However, the Court informed him that it would consider his request in the form of a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b).

claim for habeas relief, it is a successive habeas petition. Because Petitioner must first receive permission from the Third Circuit Court of Appeals in order to file a second or successive habeas petition, and he has not yet received permission, this Court lacks jurisdiction to consider his new claims.

Nevertheless, the undersigned notes that Petitioner's claim regarding destruction of the DNA evidence without notice and prior to the conclusion of his direct appeal does not present such "extraordinary circumstances" to justify reopening these proceedings. The first of Petitioner's two claims presented in his federal habeas petition was that trial counsel was ineffective for failing to secure DNA testing on a small drop of blood found at one of the crime scenes. Although Petitioner allegedly did not yet know that the blood evidence had been destroyed when he first presented this claim in his PCRA petition or in his federal habeas petition, on appeal from the denial of PCRA relief the Superior Court of Pennsylvania found that Petitioner could not demonstrate prejudice for counsel's failure to seek DNA testing because it would not exonerate Petitioner of the crime even if the blood did not belong to him. This Court determined that Petitioner was not entitled to habeas relief because the Superior Court's decision was not "contrary to clearly established Federal law" nor did it "involve an unreasonable application of clearly established Federal law." Thus, even if Petitioner were afforded the opportunity to present this claim in a subsequent federal habeas petition, he would most likely not be entitled to relief because the Superior Court took into consideration that the blood may not have been Petitioner's when it held that counsel was not ineffective for failing to secure DNA testing.

Furthermore, Petitioner's claim regarding the state courts' refusal to provide him with an evidentiary hearing fails to assert a viable federal habeas claim. The weight of authority holds

that such errors are simply not reviewable in a federal habeas proceeding. "The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into a habeas calculation." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1990). Accordingly, Petitioner would not be entitled to habeas relief on this claim if it too were presented in a subsequent petition.

Finally, to the extent Petitioner attempts to obtain relief pursuant to McQuiggin, it is inapplicable to his case. As previously noted, in McQuiggin, the Supreme Court held that actual innocence constitutes an equitable exception that can overcome a procedural bar or expiration of the statute of limitations so that a federal habeas court can adjudicate a federal habeas petition on the merits. 133 S. Ct. 1924. Here, Petitioner's federal habeas petition was considered on the merits. This Court did not find that it was untimely or that either of Petitioner's claims were procedurally barred from review. Each claim was addressed and reviewed in accordance with appropriate habeas standards.

More importantly, the undersigned believes that Petitioner's "newly discovered evidence" – i.e., the fact that DNA evidence was destroyed prior to the conclusion of his direct appeal – is insufficient to meet Schlup's actual innocence standard. The Supreme Court has stressed that this standard is demanding and requires "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup, 513 U.S. at 316. A petitioner must show, usually by way of new evidence, "that it is more likely than not, that no reasonable jury would have convicted him." Id. at 327; Glass v. Vaughn, 65 F.3d 13, 16-17 (3d Cir. 1995). This can be shown through exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence that was not presented at trial. Schlup, 513 U.S. at 324; *see also* Cristim v. Brennan, 281 F.3d 404, 420-21 (3d Cir. 2002). There is no guarantee that the blood found at the scene of the crime was someone else's blood, and, even if it were, it would not necessarily have resulted in Petitioner's acquittal.

Lastly, to the extent Petitioner attempts to bring a stand-alone actual innocence habeas claim, then his Rule 60(b) motion is considered a second or successive habeas petition. Under these circumstances, Petitioner is asserting a new ground for relief so the Third Circuit must first grant him permission to raise the claim in a successive petition. *See* 28 U.S.C. § 2244(b)(2). However, the Supreme Court has not yet resolved the issue of whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. McQuiggin, 133 S. Ct. at 1931 (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)).

Therefore, Petitioner provides no cause to disturb the Court's denial of his petition.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Petitioner's Relation Back to Amendments (ECF No. 27), which has been construed as a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b), be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: July 9, 2014.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc: Antonio D. Ferguson
    GB-8731
    SCI Graterford
    P.O. Box 244
    Graterford, PA 19426-0244
    (Via First Class Mail)

    Counsel of Record
    (Via CM/ECF Electronic Mail)